UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| WADIE ISSAWI and HANAN ISSAWI,<br><br>Plaintiffs,<br><br>v.<br><br>AMERICAN EDUCATION SERVICES,<br><br>Defendant. | Case No. 17-cv-532-JPG-RJD |

## **MEMORANDUM AND ORDER**

This matter comes before the Court on the motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) filed by defendant American Education Services ("AES") (Doc. 40). Plaintiffs Wadie Issawi and Hanan Issawi (collectively, "the Issawis") have responded to the motion (Doc. 42).

## **I.  Standard for Dismissal**

When reviewing a Rule 12(b)(6) motion to dismiss, the Court accepts as true all allegations in the complaint. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). To avoid dismissal under Rule 12(b)(6) for failure to state a claim, a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This requirement is satisfied if the complaint (1) describes the claim in sufficient detail to give the defendant fair notice of what the claim is and the grounds upon which it rests and (2) plausibly suggests that the plaintiff has a right to relief above a speculative level. *Bell Atl.*, 550 U.S. at 555; *see Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *EEOC v. Concentra Health Servs.*, 496 F.3d 773, 776 (7th Cir. 2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to

draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Bell Atl.*, 550 U.S. at 556).

**II.     Background**

The Issawis filed this lawsuit after discovering that their names had been forged on several documents pertaining to three student loans made by Charter One Bank, N.A. to Renee Issawi, the Issawis' daughter. The loans were being serviced by AES.[1] The loans were issued to Renee Issawi as the "Borrower," and one or the other of the plaintiffs signed as the "Cosigner" when the loans were issued at various times from 2004 to 2007. On all three of the loans, the option of deferring payment of principal and interest was elected. The plaintiffs assert that Renee Issawi later forged their signatures on documents seeking forbearance of the loans. The forbearance requests were granted. As a consequence of the forbearance, payments on the loan principal were not made, and interest accrued. AES never sent the Issawis the forbearance documents or verified that their purported signatures on the forbearance documents were authentic. Nor did they send the Issawis any information about the loans or request any payment from them until January 2016.

The Issawis first learned of the forgery when AES attempted to collect the loans in January 2016 and threatened to sue the Issawis if they did not start repayment. In February 2017, the Issawis informed AES of the forgery, but AES declined to relieve them of the loan obligation, saying that their claim of identity theft could not be substantiated.

---

[1] A loan servicer, as opposed to the lender, is responsible for the day-to-day tasks needed to manage a loan and "typically processes your loan payments, responds to borrower inquiries, keeps track of principal and interest paid, manages your escrow account (if you have one)." *What's the difference between a mortgage lender and a servicer?*, Cons. Fin. Prot. Bureau (Sept. 13, 2017), https://www.consumerfinance.gov/ask-cfpb/whats-the-difference-between-a-mortgage-lender-and-a-servicer-en-198.

The Issawis filed this lawsuit in May 2017 because they believed AES's conduct violated the Fair Credit Billing Act ("FCBA"), 15 U.S.C. § 1666, by giving effect to the forged documents, resulting in the accrual of interest and finance charges beyond what would have accrued without the forbearance. They also accuse the defendants of being negligent in accepting and giving effect to the forged documents.

In an October 10, 2017, order (Doc. 33), the Court dismissed the Issawis' Complaint without prejudice. Specifically, it found that the Complaint was sketchy as to what responsibility AES had for accepting and processing the loan forbearance documents for Renee Issawi's loans and what steps it took to reasonably perform that duty, if one existed. The Court concluded that the Issawis therefore had failed to plead sufficient facts to plausibly suggest a right to relief. However, because the Court believed it might be possible to allege such a cause of action against AES, the Court allowed the Issawis to replead a negligence claim against AES. The Court warned them, however, that if they failed to amend their complaint to allege a negligence theory against AES in a timely manner, the Court would dismiss the negligence claim with prejudice and would enter final judgment. The Court further suggested the Issawis contact a lawyer familiar with consumer fraud law to assist them with their case.

The Issawis filed the Amended Complaint in November 2017 adding allegations about AES's failure to keep them informed about that status of the loans or seek payment from them prior to January 2016 and citing "consumer fraud laws" rather than the FCBA. AES now asks the Court to dismiss this case on the grounds that the Issawis have exceeded the scope of the allowed amendment, a negligence claim; they do not have any right under the loan agreements to communications or to sign forbearance applications; and they fail to adequately plead a negligence claim or a statutory fraud claim.

**III.     The Loan Agreements**

As a preliminary matter, the Court notes that AES's motion to dismiss refers to matters outside the pleadings, the loan agreements at issue in this case. When such material is presented in connection with a Rule 12(b)(6) motion to dismiss, the Court may treat the motion to dismiss as a motion for summary judgment or it may exclude the additional material from consideration. *See* Fed. R. Civ. P. 12(d). There is an exception to this rule, however, where the additional matter is a document referred to or relied on by the complaint but is not attached to the complaint and where the authenticity of the document is unquestioned. *Minch v. City of Chi.,* 486 F.3d 294, 300 n. 3 (7th Cir.2007). In such a case, the Court may consider the additional matter without converting the motion to a summary judgment motion. Here, AES has attached an affidavit identifying, authenticating and attaching copies of the actual loan agreements the Issawis signed for the loans in question. These documents are central to the Amended Complaint, and the Issawis do not challenge the authenticity of those documents. Therefore, the Court finds it appropriate to consider those documents in ruling on the pending motion to dismiss without converting the motion to a summary judgment motion.

Important to this case, each of those documents provides that where the deferral repayment option is selected, as it was on the loans at issue in this case, the lender "will send statements during the Deferment Period (showing the outstanding principal balance of my loan and the interest that has accrued on my loan). You [the lender] reserve the right to send statements to either the Borrower or the Cosigner." 2004, 2005 & 2007 Loan Agreements (collectively, "Agreement") ¶ E(1) (Doc. 40-1 at 7, 15 & 23). Each further provides that during the loan repayment period, the lender "will send me [Borrower and Cosigner] monthly statements that show the amounts of minimum monthly payments and the payment due dates.

4

You [the lender] reserve the right to send monthly statements or coupon books to either the Borrower or the Cosigner." Agreement ¶ E(2) (Doc. 40-1 at 7, 15 & 23). Unless required by law, the lender "need not give a separate notice to the Cosigner. . . ." Agreement ¶ J(2) (Doc. 40-1 at 8, 16 & 24).

The Agreement further provides for forbearance of a loan if it is unable to be paid in accordance with the terms of the Agreement. Where forbearance is granted, the Agreement provides that "I [Borrower and Cosigner] will remain responsible for all interest accruing during any period of forbearance and that you [the lender] will add any interest that I [Borrower and Cosigner] do not pay during any forbearance period to the principal balance. . . ." Agreement ¶ H (Doc. 40-1 at 8, 16 & 24).

The Agreement also contains the following provision

L. Additional Agreements.

\*\*\*

9. If this Credit Agreement is executed by more than one Borrower, each Borrower agrees that any communication between you and any of the Borrowers will be binding on all of the Borrowers. *I intend to be treated as a principal of this Credit Agreement and not as a surety. To the extent I may be treated as a surety, I waive all notices to which I might otherwise be entitled by law, and all suretyship defenses that might be available to me (including, without limitation, contribution, subrogation and exoneration). I agree that the Borrower may agree to any forbearances or other modification of the repayment schedule and that such agreement will be binding on me.* It shall not be necessary for you to resort to or exhaust your remedies against the Borrower before calling upon me to make a repayment. For purposes of this paragraph only, "I" and "me" refer to the Cosigner only.

Agreement ¶ L(9) (Doc. 40-1 at 8, 16 & 24) (emphasis added). As noted above, Renee Issawi signed each loan agreement as "Borrower," and one or the other of the plaintiffs signed as "Cosigner" applying for joint credit and to be jointly liable with the Borrower.

5

**IV.    Analysis**

    A.    <u>Beyond Scope of Allowed Amendment</u>

AES first asks the Court to dismiss the Amended Complaint because the Issawis have exceeded the scope of the amendment the Court allowed in its October 10, 2017, order. That order contemplated the addition of a negligence cause of action and suggested the plaintiffs consult an attorney versed in consumer fraud law.

The Court declines to dismiss the Amended Complaint because it asserts more than a negligence cause of action. The plaintiffs are *pro se* and should be allowed some leeway in their pleading. The Court's suggestion that they seek assistance from a consumer fraud lawyer may have been construed to indicate it would allow the amendment to include causes of action under consumer fraud statutes as well as negligence. Additionally, and more importantly, even with the additional causes of action attempted to be pled, the Amended Complaint is subject to dismissal. The Issawis' failure to limit their Amended Complaint to negligence is immaterial to the outcome of this case.

    B.    <u>Right to Communication from AES</u>

AES next asks the Court to dismiss this case on the grounds that what the Issawis allege AES did was expressly permitted by the Agreement. On the other side, the Issawis contend that, as Cosigners, they were entitled to notices regarding the loans and to make decisions about the loans.

The plain language of the Agreement reveals that AES is correct. The Agreement states that, during both the deferment and repayment periods, AES, on behalf of the lender, could elect to send *only to the Borrower* statements of the outstanding principal balance and interest and statements of the minimum payments due and the due dates. The Borrower alone could agree

6

with AES to forbearance or any other modification of the repayment schedule, and both the Borrower and Cosigner would remain responsible for interest that accrues during a forbearance period, including capitalized interest. Finally, in the "Additional Agreement" quoted above, the Cosigner waived all notices to which he or she might be otherwise entitled as a surety.[2]

Under these terms, AES had no obligation to send any notices to the Issawis so long as they sent them to Renee Issawi, and there is no allegation that they failed to do that. As the Borrower, Renee Issawi also had the authority, without the signatures of her Cosigners, to execute a forbearance agreement, and her Cosigners would be bound by those agreements and the additional debt created as a consequence. Essentially, the Issawis put themselves at the mercy of their daughter with respect to liability for her loans. Renee Issawi's alleged forgery of her parents' signatures, while reprehensible, is immaterial to the status of her loans where those signatures were not required for the forbearance.

C. Negligence

AES asks the Court to dismiss any negligence claims the Issawis intended to plead on the grounds that AES had no duty to communicate with the Issawis or to authenticate their signatures on the forbearance agreements. In response, the Issawis claim AES was negligent in a number of ways, including by not sending them bills for the loans until 2016, charging outrageous interest, and covering up fraud by calling it identity theft.

Under Illinois law, to establish negligence, a plaintiff must show "the existence of a duty owed by the defendant to the plaintiff, a breach of that duty, and an injury proximately caused by

---

[2] AES argues that the Issawis are not entitled to notice by virtue of the part of ¶ L(9), which states, "If this Credit Agreement is executed by more than one *Borrower*, each *Borrower* agrees that any communication between you and any of the *Borrowers* will be binding on all of the *Borrowers*" (emphasis added). AES interprets this provision incorrectly. The Issawis are not "Borrowers," but "Cosigners," so this clause of ¶ L(9) does not apply to them.

that breach." *Ward v. K Mart Corp.*, 554 N.E.2d 223, 226 (Ill. 1990). The Issawis have failed to plead facts plausibly suggesting a right to recovery under a negligence theory. As explained above, AES had no duty to bill the Issawis, to send them any notices, or to obtain their consent to any forbearance concerning Renee Issawi's loans. To the extent they allege AES was negligent by failing to authenticate their signatures on the forbearance agreements, they have not pled any injury because their signatures were not required. Additionally, although they complain that the interest charged was outrageous and negligent by its very magnitude, the Issawis have not pled facts suggesting the interest accrual and capitalization strayed from the terms to which they agreed in the original Agreement.

The Issawis also make much of the fact that they reported the forgery to AES, which spoke of it as identity theft. This is understandable, for they are opposite sides of the same coin. In signing a name that was not hers, Renee Issawi was effectively assuming the identity of one of her parents. Thus, it was not negligent for AES to label the forgery complaint as identity theft. Additionally, the Issawis have not pled facts suggesting any harm came out of this disagreement about what to call Renee Issawi's wrongful conduct.

D. Consumer Fraud

Finally, AES asks the Court to dismiss any claim under the Illinois Consumer Fraud and Deceptive Practices Act, 815 ILCS 505/1 *et seq.* One of the essential elements of such a claim is a deceptive act or practice by the defendant. *Sheffler v. Commonwealth Edison Co.*, 955 N.E.2d 1110, 1127 (Ill. 2011). The Issawis have failed to allege any act or practice by AES that was not expressly allowed by the Agreement, which contains numerous warnings to Cosigners about the

8

joint liability they incur when they agree to be Cosigners. The Court is hard-pressed to see how AES's conduct, permitted by the Agreement, is deceptive.[3]

**V.  Conclusion**

For the foregoing reasons, the Court finds the Issawis have not pled, and cannot plead, a cause of action plausibly suggesting they are entitled to a right to relief from AES. Accordingly, the Court **GRANTS** AES's motion to dismiss (Doc. 40), **DISMISSES** this case **with prejudice**, and **DIRECTS** the Clerk of Court to enter judgment accordingly.

**IT IS SO ORDERED.**
**DATED:  March 14, 2018**

s/ J. Phil Gilbert
**J. PHIL GILBERT**
**DISTRICT JUDGE**

---

[3] Although not expressly addressed by the parties, a cause of action for common law fraud under Illinois law would fail for similar reasons. Common law fraud required a false statement of material fact, *Jane Doe-3 v. McLean Cty. Unit Dist. No. 5 Bd. of Dirs.*, 973 N.E.2d 880, 889 (Ill. 2012), and the Issawis have not alleged AES did or said anything that could be construed as a false statement of material fact.